The first case on today's docket is clause number 17-50885, United States of America v. Hierro-Vega. Appellant ready to proceed. May it please the Court, Laura Greenberg for Francisco Javier Del Hierro-Vega. There is one issue before the Court in this appeal today and that is whether the agents lacked probable cause to arrest and seize Mr. Del Hierro. In order to effectuate a lawful warrantless arrest, the agents... When did the arrest occur? Pardon? When did the arrest occur? They arrested Del Hierro in a car as it was parked in a public parking lot in the evening. He was sitting in the passenger seat. They were constantly in touch with this particular car and unknown to him they were dealing with agents, but they knew that one car was there and they moved in to make an arrest there and this defendant was a passenger in that car and they had no prior information about him. Is that correct? That is correct, Your Honor. Now, when did they arrest him? They put the... the officer approached the car, both sides affected... took both into custody. When did the arrest occur? The arrest occurred immediately. The argument is that the probable cause to arrest at that point and then with that probable cause to arrest, the evidence with regard to the car across the street that appeared when they punched this defendant's key fob and the lights went on. That's correct, Your Honor. And they searched that vehicle? That's correct. They arrested both men immediately. The driver, Vincent Chavez, and Del Hierro, who was in the passenger seat, was arrested immediately and that's very clear in the record. I think a record on appeal 285. And they immediately searched Del Hierro, took out the contents of his pocket, incident to that arrest, and at some point, fairly soon thereafter, another officer, I think it was the Presidio County Deputy, pushed the key fob, which lit up the car across the street. And do you... and what is the... does it follow necessarily from the fact that the arrest would have occurred immediately when the officers approached the vehicle with both subjects there? So that's a lawful arrest at that point. Does that control the later search of the vehicle across the next parking lot? Yes, Your Honor, it does because they were led to the other vehicle by what they obtained from the unlawful search of Del Hierro. So that is... that's a fruit of the unlawful of the unlawful arrest and search of Del Hierro. And it's important to note that while the agents had specific information about Vincent Chavez, the driver, they lacked, as Your Honor pointed out, specific information about Del Hierro. He was a passenger in the automobile. I was surprised that the agents maintained that that was a purely a custodial stop of a passenger and they gained probable cause for sure when they punched the fob and the second vehicle was identified, given the predicate that they were expecting a second car. They'd been told there's a second pickup car and it had supplies. But you don't argue that. You argue... you stand or fall on the legality of arresting a person who is unlawful. You argue that there was no prior information would be present and he offered an explanation for being there and it's a... there was probable cause at that juncture. That's where you... that's where you would arrest. This is an unusual case as far as cases that I've seen where there is such an immediate custodial arrest. Often arguments before this court involved investigative detentions in which perhaps probable cause may or may not arise during the course of that detention. But there's no question that the agents and the testimony was very strong on that point. Okay, you were asked there, what's the probable cause to arrest him? The probable cause to arrest Del Hierro was absent. The information that the agents had about Chavez, there was some pretty specific information about the driver that he had been involved in a possible pickup of some smugglers, actually some agents posing as smugglers off of Highway 90 that he had abandoned for the evening because he detected too much law enforcement activity in the area and so he had abandoned that plan for the evening and I'm referring to Chavez and headed back to Alpine and after he had already abandoned that activity and arrived in Alpine, at some point an agent who was surveilling Mr. Chavez but who had lost sight of Chavez was able to relocate him and at that point he waited for the other agents to arrive to effectuate the arrest and that's what they did immediately and I think they were surprised to find Del Hierro in the passenger seat. There had been an surveilling agent, the one who lost sight of Chavez, at a gas station in Marfa, Texas about 26 miles away and the testimony is very important and very clear that that surveilling agent had Chavez and Chavez's vehicle under surveillance for about 15 minutes in a well-lit gas station and he had an vehicle and he saw one Hispanic male and we know from the description that that was Chavez. He didn't see another vehicle so even though the agents might have been expecting a second vehicle, there was no evidence that the surveilling agent saw another vehicle at that time or saw a second individual at that time. Again, as the surveilling agent was following Chavez, the explanation that he gave to them was that he was just driving through this part of the country and he happened to see this friend of his and that happens to be between Alpine and Marfa and he sees them and he stopped and just chatting. That is the statement. He's driving a vehicle one way and did he offer an explanation of how he happened to see the person? His friend? Correct. And there was a period of time, I think the testimony at Record on Appeal 244 is the most specific as far as the amount of time that the surveilling agent saw outside of Chavez and so at some point during that amount of time, Del Llaro joined Chavez in the vehicle. And that was some 30 to 45 minutes? The testimony as far as at the point in time when the surveilling agent saw Chavez and Marfa was like a 10 to 10-15. The arrest occurred in Alpine, 26 miles away. An hour and a half later. So it's unclear how much time the surveilling agent lost sight and when the agent lost sight, but quite a bit of time had passed when he relocated and the agent was able to relocate Chavez's vehicle and again take up surveillance. The government was looking for the second car, expecting a second car because they'd been told that the pickup car was coming. And what do you say to the suggestion that when they moved on this car they had been having under surveillance, that the second person in the car, they're probably causably that that person is the driver of the second car. It's without regard to their later discoveries. In other words, they said they only found two people and one of them may be the driver of the other car. Well, I think. They weren't expecting to find the one person. They were telling me they found two. Is that correct? I think they were expecting two vehicles, although. Although that's two vehicles, but but you have that made when you found the two people there, you know that the suggestion is that that gave them cause to believe that this person. And by his very presence under these circumstances would probably cause the police to believe that he is the second driver. I'm not going to make the argument. I want to hear your response to that. That's the government's argument. Well, I think that that's correct that they were obviously expecting a second vehicle. They had only been given the description of one vehicle and one man. The man who had picked up these these backpackers earlier in the preceding days. There's no. It was the government's burden, obviously, to establish probable cause for this warrantless arrest. There was no testimony that they saw a second vehicle parked right by this vehicle that would have suggested that Del Llero got out of a second vehicle and got into Chavez's vehicle. There was no testimony that they that they saw a second vehicle driving along with Chavez. And so while that might have been a reasonable expectation based on what they had been told, there was no evidence to suggest that Del Llero was that second driver. And in fact, they found him in the car. I assume that there was no probable cause, just by his presence. But were they weren't they entitled at that juncture to what they're dealing with a drug operation and they approached this vehicle that night. As I read the transcript, they were their guns were drawn because they had a matter of safety approaching both sides and the second person in the vehicle. They don't know who they are now. They're entitled, then I would think you would agree, to to frisk that individual, the terrorist stop, at least, and to try to make some determination who you are and, you know, what's your story? Why are you here? Because they know why that other person is there. At that juncture, the police, in the course of that pat down, then they're entitled to take any weapons from him and whatever, except for self-protection, still not under arrest. And then they then they find the FOB. I think that in the FOB opens another whole set of worms. Well, even if it were a search and if it was a frisk for officer safety, which one might expect, regardless of whether it was an investigative detention or a probable cause arrest, it wouldn't give the officer reason to take a key fob. That's clearly not a weapon out of somebody's pocket and activate that key fob. So that was not... They're entitled to take his keys or whatever, so they know what they're dealing with. Now, whether they can punch that button, that's another issue. But you're not arguing with that. No, Your Honor, I'm not. I'm arguing that that search was not a search, wasn't a weapons frisk, that wasn't the government's position. Not that that would prevent the court from finding that, but it wouldn't be within the scope of a weapons frisk to take a key out of somebody's pocket. It's a little strange to figure out who's on first on these arguments because before the magistrate judges, the officers had conflicting positions about when they made the arrest. But I don't hold them accountable for what the legal... Some thought that they made their... No, no, that was just a stop and frisk and so forth. The other one went the other direction. I was somewhat surprised when reading the transcript myself that this was not a reasonable suspicion type of investigative detention. I think like in the Zavala case that I've cited, there may have been a basis for investigation based on the suspicion of Chavez, but there was not probable cause to arrest and search Mr. Del Hierro. And that's our position. I'll save my rebuttal. Ellie. May it please the court, Elizabeth Berenger on behalf of the United States. Now, it's uncontested in this case that agents had probable cause to believe that a crime had been committed. Obviously, they had already seized the drugs and the backpackers, and they reasonably believe that that explorer was involved in the crime. Now, the disputed issue is whether... And also, again, it's uncontested whether that officers reasonably believed that more than one person was involved. And I know we had some discussion about they only thought one other car was involved, but I direct the court's attention to Agent Werner's testimony, who'd made hundreds of arrests, similar arrests in this case, and he testified that sometimes there are multiple vehicles and sometimes there are multiple people in each car. So, whatever it was, the officers had reasonable belief that more than one person was involved. So, now the district court correctly concludes that the officers reasonably suspected that the occupant of the explorer that was parked in the parking lot was involved in the drug trafficking offense. And I'd just like to, because there's a little confusion about the timeline, briefly go through what the officers were seeing in their experience. They're very experienced agents that had been there for a long time. Agent Wright had been there 25 years in the same station. So, they pick up this explorer in Marfa and see it filling up. And at that point, Hirschberger lays eyes on that car. And he begins following that car as it's going along Highway 90, which is, if you're not familiar with the road, a very desolate, middle-of-nowhere place, two-lane road in West Texas. He's following this car as it's looking for these backpackers along the road. He has eyes on. He says he's loosely tailing, loose surveillance on the vehicle. 281 is the reference for that, 279, 309. So, he has loose surveillance on the vehicle. He realizes that that car didn't pick up the backpackers. It passes the spot. So, we're only 15 miles outside Alpine at this point. And he still has loose surveillance on that car. Now, when you hit the layup spot all the way to Alpine, there's this really windy mountain pass, as the district court found. And it's two lanes. It's no cell reception. At what point did he lose sight of him? He said that he realized he still had loose surveillance on the car as it passed the layup spot. And the testimony is that the layup spot was 15 miles from Alpine. So, that is from the record. 312 is the distance from Marfa to Alpine. 313 to 319 is the distance from the layup spot to Alpine. And he still had loose surveillance on the car as it passes. And that's from 281. He realized it never stopped. He said he had a long eye on it. That's the testimony from Agent Wright. So, then as they're going through the mountain pass, he's still following this car, but he loses sight. And the district court found that it was just a brief period, and that finding is supported by the record. Because it's just a mountainside. He said there's only one way to go, and that's to Alpine. He's following this car. Yes, he doesn't see the car, but they're both driving, and the only way to go is to Alpine. And the direction is they're traveling to Alpine. So, then when Agent Hershberger gets to Alpine, he sees this Explorer, the same Explorer he's been following since 10 o'clock. Given that you have probable cause to affect the rest of the driver of that vehicle, the large argument here is the passenger. Yes. Yes, absolutely. I understand your arguments about the vehicle and all of that. Right. I don't think that's really the issue. Well, I beg to disagree, because they had been only a brief time where this car is... This car is the instrumentality of the crime. It's the essence of this case, is this car. And so, if we only have a brief break in that car, and we're following that, and then once Agent Hershberger gets there, there's been... How long did he lose sight of the car? It's not clear from the record, but it's brief. It's brief. He's just following the car down this pass, and when he gets to Alpine, it's not a big town. He pulls into Alpine, and he sees it parked in a vacant parking lot alongside the road. He doesn't know that there's only one person. He never testified there were two people in the vehicle, or did he? Well, there's a little dispute. In the record, it says they had no idea how many people were in that car. I know that we said that there's... The defendant said that they saw only one person, but the actual testimony is that they weren't sure how many people were in the car. When they saw the guy gassing up, they saw one person, but they couldn't see if anybody else was in that car, and that's from 282 and 310 in the record. Agent Werner said that sometimes there's multiple people in the car. The car windows were tinted. We know that from page 284. So they don't know how many people are in the car. So once Agent Hirshberger sees the car, it's in a vacant parking lot at 11 p.m. at night in the middle of Alpine, Texas. He sees it there. He sits on the car until the other agents arrive. He's just sitting there watching the car, and that is from record 282. I mean, there's a brief break, and under those circumstances... We're dealing with probabilities in probable cause. We're not dealing with hard certainties where the police are not required to rule out innocent explanations that some man just happened to see his co-worker at 11 o'clock at night in a vacant auto zone parking lot in Alpine, Texas. They're not required to rule that out. What we have to look at is whether those agents had a reasonable belief that all of those circumstances amounted to probable cause. And as far as individualized suspicion, when we have some sort of similar situation... That car has been traveling along for the past couple hours between Marfa and Alpine looking for backpackers. The agents were entitled to infer that there was a common enterprise among the occupants of that car. So I would like to just briefly distinguish this case from DeRay. Again, in DeRay, the vehicle had absolutely nothing to do with the crime. Here, the car was the indispensable instrumentality of this crime. The car and its occupants were central to it. The case Gilliam that I cited in the 28J letter, it recognizes that a defendant's presence in a car contemporaneously or in close proximity to when that same car is involved in a criminal offense can develop probable cause. It's not his mere presence to the driver. It's his presence in that car at the same time that car is involved in a crime. Another distinguishing factor from DeRay is in DeRay, they were able to single out one specific passenger. I mean, the CI pointed out the driver and the driver only. That's the language from DeRay. So in this case, we don't have a singling out that the driver is the only person involved in this car. Agent Werner's testimony establishes, which was credited by the district court, that there were more than one person involved in the car and that sometimes the car has multiple occupants. Also, DeRay, of course, was in broad daylight. It was in a large city, sitting in a parking lot in plain sight of lots of passerbys. The defense citation to DeZavala is also distinguishable in that that meeting between the suspected drug dealers, there was never any seizure of drugs. Here, we had already had the seizure of the drugs. The agents already had the drugs in hand. They were looking for the explorer. They're looking for the vehicles that were coming to pick up the drugs. So DeZavala is not really... What about the search of the second vehicle? What's the consequence to the government of that in terms of the legality of the second search? In fairness to the defendant, it was the government's theory below that the arrest happened as soon as they opened the doors and just... I'll go back to the doors later. Some of the agents said that. I thought one of the agents said something else. I think that's what the magistrate concluded that. But the officer themselves were a bit uncertain about when they had effected an arrest or not. Yes, or even whether the subjective beliefs of the officers is really relevant is, of course, it's not their subjective belief. But the testimony below and the government's theory below was that they arrested those defendants right when they opened the doors. I agree that there are multiple theories perhaps at this point. I understand that, but why do we need to address the search of the second vehicle? I don't believe you do. I think if... I don't... I find it very confusing in the blow about these things were collapsed together. I suspect because of just the notion that the uncertainty as to whether or not that first arrest of this, whether it wasn't an arrest in the earlier or custodial containment. Yes, Your Honor. And one of the officers, arresting officers, was a very experienced officer who said that it was just custodial. Yes, Your Honor. I missed that last part. I don't know what that... I just don't know what we're talking about in this case about the use of the fob to find that that is corroborative for purposes of convictions and so forth, but... The use of the fob is not relevant to whether they had probable cause to arrest. If they had probable cause to arrest, they certainly had the right to go into his pants pocket and take the fob and use the car. This is not briefed, but there's also a recent Seventh Circuit decision showing that a house clicker, that they can go around and use a house clicker to open garages. So I think they were clearly within the parameters of their rights under the Fourth Amendment when they click the key fob. But back to the Pringle deter... Oh, and I did want to mention also as further evidence that they were suspecting multiple people, the way that Agent Wright describes going into that car and Agent Werner, how they're approaching it from the back, opening the back doors to make sure they weren't going to be surprised by anyone in the back seat, opening both sides of the doors. If they had thought that this was just the driver, why would they go to all the lengths of opening all the doors to prepare themselves for officer safety purposes? But ultimately, under Pringle, it was reasonable for the agents to infer that anyone inside this car that had been involved for the past several hours in arranging a pickup of drugs and driving back and forth along Highway 90 in the dark, looking for those backpackers, and then parked in an empty parking lot along Highway 90 at 11 o'clock at night was part of a common criminal enterprise that satisfies the Fourth Amendment requirement for individualized suspicion of the passenger of that car. And if there are no further questions, I would just cede the rest of my time to the court and ask you to affirm the conviction and sentence. Rebuttal. Just briefly, Your Honors. The fact that the officer testified that it's not uncommon to find multiple people involved in this type of criminal offense, it would be reasonable if the officer stopped, and I'm sure this happens, that there's a stop where there's not just a driver, there's a passenger, they're on their way to pick up somebody, smugglers, this happens undoubtedly, and that could be part of what the agent, with all of his years of experience, is talking about, that there often will be more than one person involved in this type of smuggling operation. But in this case, again, they may have expected two vehicles, but there was not specific facts to believe that Del Llero was the driver of the second vehicle. Again, to me, I know that it's unclear how much time passed when the surveilling agent lost sight. Do you argue that they were not entitled to make, in essence, a terrorist stop or custodial arrest and to risk him down? And if they could do that, then there's a very powerful argument that they can push that button and see what happens. In other words, regardless of your— if you will, at least they could make a custodial arrest even if they didn't have probable cause. Assume you're right, that they didn't have probable cause, they could at least check him out, and then it would lead very quickly to corroborative evidence in the second vehicle. I believe the government said that it was its position below, and it's supported by the record that it was a full custodial arrest and that the search was incident to arrest. The district court found specifically that the recovery of the key fob was incident to arrest, not to any kind of weapons risk. I was just suggesting that even if you're correct in that, you have a very difficult second problem and that you go to the next theory. At the least, it's very difficult to argue on the fact of this case that it's not at least entitled to frisk him and to take it down. And then you can make some argument about the electronic budget, but I think that's a loser too. And when they go to the other vehicle, there are the supplies and so forth. I'm just trying to be clear about my confusion. There is some lack of clarity there, but I think the evidence is clear that it was part of a search incident to arrest. I understand. You've been very clear. I understand that. Thank you. The testimony, again, I know that the government is arguing there's some confusion, but it wasn't just that the agents saw only one person. I think they did say that they saw only one person, the surveilling agent, when Chavez was at the gas station in Marfa. But the specific question was, it was well lit. There was an opportunity to see in that car. And the agent said they saw one Hispanic male in that car. So I don't think there's ambiguity about the fact that Del Llero was not with Chavez and Marfa or on that trip back to pick up those backpackers that eventually Chavez abandoned because there was so much law enforcement in the area. And the cases cited by the government like Gilliam that also tangentially relate to suspects in a car together, I think they really illustrate how many more facts are evident when probable cause is found. As in Gilliam, it wasn't just that these suspects were found in a car assailants having worn. They were carrying plastic bags that had the bundles of items that looked like the proceeds from the robbery. So again, there are far more facts that would form a basis of probable cause than simply finding someone in a car with a man that they suspected. If there are no further questions, thank you very much. Thank you, Counsel. We'll take this matter under advisement. We call the